IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GERALD FISHER,

             Plaintiff,

    v.

EDUCATIONAL CREDIT
MANAGEMENT CORPORATION,
LLC, a foreign limited liability
company,

             Defendant.

CIVIL ACTION FILE NO.

1:16-CV-2724-TWT-JFK

## **FINAL REPORT AND RECOMMENDATION**

The above-styled case is presently before the Court on a motion [Doc. 11] to dismiss filed by Defendant Educational Credit Management Corporation, LLC ("ECMC"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for which relief can be granted.  Also before the Court is a document filed by the *Pro Se* Plaintiff Gerald Fisher ("Fisher") on September 22, 2016, entitled "Motion for Summary Judgement [sic]." [Doc. 7].

Plaintiff Fisher filed his Complaint [Doc. 3] in this case on July 29, 2016.  In his Complaint, Plaintiff asserts claims against Defendant ECMC alleging violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*., Bank Fraud, 18 U.S.C.

§ 1344, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68. [Doc. 3 – Plaintiff's Complaint ("Compl.")].

This matter has been submitted to the undersigned for Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B). Notwithstanding Plaintiff's summary judgment motion, as explained infra, the Court's analysis is under Fed. R. Civ. P. 12(b)(6).

## I.    Factual Background

On a motion to dismiss under Rule 12(b)(6), the complaint's factual allegations are assumed true and construed in the light most favorable to the plaintiff.  Hardy v. Regions Mortg., Inc., 449 F.3d 1357, 1359 (11th Cir. 2006); M.T.V. v. DeKalb County School Dist., 446 F.3d 1153, 1156 (11th Cir. 2006).  "However, conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) (citations omitted).

As an initial matter, the Complaint includes a number of conclusory allegations and citations to legal authorities that are not appropriate for inclusion in a complaint and will not be set forth in the following statement of facts.[1]  See Moore v. McCalla

---

[1] Plaintiff's Complaint appears to be a standard form utilized by *pro se* litigants indicating to the court that a number of the factually unsubstantiated claims and assertions contained therein probably have no applicability to the circumstances in this

<u>Raymer, LLC</u>, 916 F. Supp. 2d 1332, 1342 (N.D. Ga. 2013) ("The complaint contains whole paragraphs of legal argument, quotations, and citations which have no place in a complaint.") (citing <u>Chevy Chase Bank, F.S.B. v. Carrington</u>, 2010 WL 745771, at *4 (M.D. Fla. March 1, 2010) ("Huge swaths of the . . . Complaint are improper irrespective of their relevance, consisting of lengthy legal arguments, case citations, and quotations from treatises–material proper in legal memoranda, but almost never proper in a complaint.")).

In his Complaint, Plaintiff Fisher identifies two causes of action, described as his First and Second Claims for Relief, yet the Complaint includes reference to multiple statutes.[2] [Compl.]. Plaintiff's First Claim for Relief is brought under 15

---

case. For example, Plaintiff employs contractual jargon and makes occasional and random references to the Uniform Commercial Code. In addition, page one of Plaintiff's Complaint begins with the name and address of an "Adrian Patrick" – not mentioned elsewhere in the Complaint and inadvertently refers to "her" damages, an error found in multiple locations within the Complaint. [Compl.]. These obvious miscues tend to show that Plaintiff is attempting to adapt a template or fill-in-the-blank form creating a nonsensical Complaint.

[2] To the extent Plaintiff Fisher merely cites a statute without alleging factual underpinnings for a claim, discussion is not warranted. For example, Plaintiff cites 42 U.S.C. §§ 1983 and 1985 [Compl. at 2, ¶ 6], and the Mail Fraud statute, 18 U.S.C. §§ 1341, 1343 [Compl. at 2, ¶ 6]. Similarly, to the extent that Plaintiff employs legalese or "buzz words" asserting that no loan was made [Compl. at 2, ¶¶ 2, 4, 5], that Defendant ECMC provided no consideration [Compl. at 1–3, ¶¶ 7, 11, 12, 14, 18], and was not a "holder in due course" [Compl. at 2–3, ¶¶ 5, 12], that Defendant has "unclean hands" [Compl. at 2, ¶ 7], or was unjustly enriched [Compl. at 3, ¶ 14], these random conclusions are not supported by any factual allegations and do not warrant

U.S.C. § 1681n and includes allegations that Defendant *willfully* failed to comply with Subsections 1681e(b), 1681i, 1681b, and 1681g. [Compl. at 4–5]. Plaintiff's Second Claim for Relief alleges *negligent* violation of 15 U.S.C. § 1681o by Defendant and then recites verbatim the allegations set forth under Claim One. [Compl. at 5].

The following factual allegations are drawn from the Complaint.

On or about October 13, 2003, three student loans were obtained from Bank of America by Plaintiff Fisher. [Compl. at 2, ¶ 2]. Plaintiff identifies a Promissory Note ("Note") that he signed in favor of Bank of America in connection with his student loans described as Loan No. 909488 / 01, 03, 04 - Loan amounts 01 ($4,532.46), 02 ($1,313.00), and 03 ($1,300.00), for a total of $7,145.46.[3]  [Compl. at 1]. Paragraph Thirteen of Plaintiff's Complaint represents that the Note is attached as Exhibit A but there is no attachment. [Compl. at 3, ¶ 13].

According to Plaintiff, the Note, which Plaintiff Fisher admittedly executed, was then deposited by Bank of America into "a commercial account[.]" [Compl. at 1 and 3, ¶ 12]. Plaintiff also alleges: that "ECMC has not exchange[d] any value . . . for the alleged 'loans'" [Compl. at 1]; that it is illegal for a bank to loan its money or currency

_____

discussion.

[3] It appears that the reference(s) to Loan No. "909488 / 01, 03, 04" is a typographical error as it is not sequential and does not match Plaintiff's description of the individual loan amounts (01, 02, and 03). [Compl. at 1–2, ¶¶ 1, 5].

4

or its customers' money or currency [Compl. at 2, ¶ 2]; that "Bank of America never loaned the plaintiff its money" [Compl. at 2, ¶¶ 4, 5]; that Plaintiff signed a promissory note "but never 'borrowed' money and or currency, from Bank of America nor ECMC" [Compl. at 3, ¶ 12]; and that ECMC sought to collect from Plaintiff "a non existent debt" [Compl. at 4, ¶¶ 23–24].

Plaintiff alleges that during the past several years, ECMC has sent a number of letters and has made several phone calls to Plaintiff in connection with his student loans and the Note.  [Compl. at 4, ¶ 25].  Plaintiff complains that ECMC has never zeroed the fraudulent balance of Plaintiff's student loans and would not investigate Plaintiff's disputes.  [Compl. at 4, ¶ 25].

Specifically, in response to Plaintiff's inquiry about the validity of the student loans, on or about June 8, 2012, Defendant "refused to remove negative reports from the [P]laintiff[']s credit reports" and the loan amounts have not been brought to a zero balance. [Compl. at 2–3, ¶¶ 9, 15].

On April 23, 2013, Plaintiff requested that "ECMC correct the false negative reports regarding [P]laintiff's 'loans' to all credit agencies . . . [and] ECMC refused to adjust the false loan amounts to a zero balance." [Compl. at 2–3, ¶¶ 3, 16].

On May 8, 2013, ECMC wrote Plaintiff to advise that Plaintiff had "defaulted loans" and that ECMC was required to report: "(1) the total amount of loans made to

5

the borrower and the remaining balance; (2) the date of default; (3) information concerning collection of the loan, including repayment status of the loan; [(4)] any changes or corrections in the information since the initial report; (5) the date the loan is fully repaid or discharged." [Compl. at 3, ¶ 11]. ECMC stated, "The debt will appear as paid in full on your credit record once you have retired the entire outstanding balance[.] The default will remain on your credit report until this seven-year reporting requirement has expired." [Compl. at 3, ¶ 18]. Plaintiff alleges that ECMC's May 8, 2013, correspondence was an attempt to collect "an illegal debt" and constitutes a "pattern of racketeering[.]" [Compl. ¶¶ 6, 18].

On September 9, 2013, Plaintiff mailed "a negative averment to ECMC . . . with the opportunity to cure the 'loans' [but] ECMC did not respond to the averment nor did ECMC present an opportunity to cure the disputed 'loans[.]'" [Compl. at 4, ¶ 19].

On September 9, 2014, Plaintiff mailed "a negative averment to ECMC . . . with the opportunity to cure the 'loans' [but] ECMC did not respond to the averment nor did ECMC present an opportunity to cure the disputed 'loans[.]'"[4] [Compl. at 4, ¶ 22].

On December 1, 2014, via two different facsimiles to ECMC, "Plaintiff faxed proof of fraudulent loan practices" explaining "the mechanics of how a loan works"

---

[4] Paragraph 22 of the Complaint is identical to Paragraph 19 with the exception of the date being one year later on September 9, 2014. [Compl. at 4, ¶ 22].

AO 72A
(Rev.8/82)

and "a nine page 'truth of affidavit' detailing the bank loan fraud against the [P]laintiff by ECMC" but ECMC did not respond.  [Compl. at 4, ¶¶ 20–21].

On February 9, 2016, ECMC called Plaintiff at 1:32 p.m. in an attempt to defraud money from Plaintiff for a "non existent debt."  [Compl. at 4, ¶ 23].

On February 11, 2016, ECMC called Plaintiff at 2:30 p.m. in an attempt to defraud money from Plaintiff for a "non existent debt."  [Compl. at 4, ¶ 24].  "ECMC also threatened to with hold any income tax return from the [P]laintiff . . . in order to 'pay' back the 'loan' debt."  [Compl. at 4, ¶ 24].

Plaintiff asserts that Defendant ECMC "claims to be a student loan guarantor" and that Defendant's claim is false and/ or amounts to fraud.  [Compl. at 1, ¶¶ 2, 4, 7]. According to Plaintiff, "On August 27, 2007, the [P]laintiff entered into the Federal Family Education Loan Program (FFELP).  ECMC was never the 'guarantor' of any student 'loans'." [Compl. at 2, ¶ 5].  Plaintiff alleges that ECMC's guarantor claim "shows a pattern of racketeering, in an attempt to defraud the plaintiff from . . . property and currency." [Compl. at 2, ¶ 2].

As a result of ECMC's violations of the FCRA, Plaintiff Fisher alleges that he "has suffered, continues to suffer, and will suffer future damages, including denial of credit, lost opportunity to receive credit, damage to reputation, worry, distress, frustration, embarrassment, and humiliation, all to [his] damages . . . ." [Compl. at

7

4–5].  Fisher requests actual damages, punitive damages, statutory damages, and attorney's fees and costs. [Compl. at 4–5].

On September 22, 2016, Plaintiff filed a two-page document entitled "Motion for Summary Judgement [sic]." [Doc. 7].  Plaintiff's motion is in large part duplicative of the Complaint and is not supported by a memorandum of law, exhibits, affidavits, or other evidence.  [Doc. 7].  On October 19, 2016, the Court issued an oral order providing for Defendant's response to Plaintiff's motion and noted that Plaintiff's motion was premature and did not comply with the Local Rules of this Court, namely, L.R. 56, N.D. Ga.  [10/19/16 Docket Entry – Oral Order].

On October 20, 2016, Defendant filed its motion [Doc. 11] to dismiss.

On November 9, 2016, Defendant filed a response [Doc. 12] to Plaintiff's summary judgment motion.

Plaintiff has not filed a response to Defendant's motion [Doc. 11] to dismiss or any reply in support of his own motion [Doc. 7] for summary judgment.  The time period for doing so has since expired.  For this reason, Defendant's motion to dismiss is technically unopposed.[5]  See LR 7.1B, N.D. Ga. ("Failure to file a response shall indicate that there is no opposition to the motion.").

---

[5] Although Plaintiff did not file a response to the motion to dismiss, Plaintiff sought to move for summary judgment on all claims.

ECMC contends that Plaintiff's summary judgment motion should be denied as premature in light of the fact that Defendant has yet to file an Answer.  [Doc. 12 at 2]. ECMC also points out that Plaintiff submitted no evidence in support of his motion. [Doc. 12 at 2].  The Court agrees with Defendant that Plaintiff's summary judgment motion is premature and that the record is no more developed (i.e., no evidence supplied to inform the Court as to the nature of Plaintiff's claims) as a result of Plaintiff's summary judgment filing.  In short, there is nothing to be gained by applying Rule 56 of the Federal Rules of Civil Procedure.

The undersigned respectfully **RECOMMENDS** that Plaintiff's motion [Doc. 7] for summary judgment be **DENIED as MOOT**.

Defendant's motion [Doc. 11] to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is now ripe for disposition by the Court.

## II.    Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure include no requirement that a plaintiff detail the facts upon which the plaintiff bases a claim.  Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (as amended 2007).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment]

9

to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964–65 (2007) (citations omitted); accord Financial Sec. Assurance, Inc., 500 F.3d 1276, 1282–83 (11ᵗʰ Cir. 2007) (recognizing that "while notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory") (citations and internal quotation marks omitted).

        "Factual allegations must be enough to raise a right to relief above the speculative level," i.e., they must do more than merely create a "'suspicion [of] a legally cognizable right of action,' on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Twombly, 127 S. Ct. at 1965 (citations omitted; emphasis omitted).  "Stated differently, the factual allegations in a complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief[.]'"  Stephens, 500 F.3d at 1282 (quoting Twombly, 127 S. Ct. at 1966–67).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  A plaintiff's complaint will be dismissed if it does not contain "factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>

The court's inquiry at this stage of the proceedings focuses on whether the challenged pleadings "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007) (citations and internal quotation marks omitted). A court reviewing a motion to dismiss must keep in mind that a "motion to dismiss for failure to state a claim upon which relief can be granted merely tests the sufficiency of the complaint; it does not decide the merits of the case." <u>Wein v. American Huts, Inc.</u>, 313 F. Supp. 2d 1356, 1359 (S.D. Fla. 2004) (citing <u>Milburn v. United States</u>, 734 F.2d 762, 765 (11th Cir. 1984)). "Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law." <u>Bernard v. Calejo</u>, 17 F. Supp. 2d 1311, 1314 (S.D. Fla. 1998) (citing <u>Marshall County Bd. of Educ. v. Marshall County Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993) ("[T]he court may dismiss a complaint . . . when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.")); <u>see also</u> <u>Glover v. Liggett Group, Inc.</u>, 459 F.3d 1304,1308 (11th Cir. 2006); <u>Aque v. Home Depot U.S.A., Inc.</u>, 629 F. Supp. 2d 1336, 1350 (N.D. Ga. 2009).

AO 72A
(Rev.8/82)

"Pro se pleadings are held to a less demanding standard than counseled pleadings and should be liberally construed." Thomason v. OneWest Bank, FSB, 596 Fed. Appx. 736, 739 (11th Cir. 2014) (citing Gilmore v. Hodges, 738 F.3d 266, 281 (11th Cir. 2013)); accord Erickson, 127 S. Ct. at 2200 ("A document filed *pro se* is 'to be liberally construed' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]'") (citations omitted).   Nevertheless, nothing in that leniency excuses a plaintiff from compliance with threshold requirements of the Federal Rules of Civil Procedure. "Even though a *pro se* complaint should be construed liberally, a *pro se* complaint still must state a claim upon which the Court can grant relief." Grigsby v. Thomas, 506 F. Supp. 2d 26, 28 (D. D.C. 2007).   The Court "does not have license to rewrite a deficient pleading." Osahar v. U. S. Postal Service, 297 Fed. Appx. 863, 864 (11th Cir. 2008).

## III.   Discussion

According to Defendant ECMC, Plaintiff's Complaint fails to state a claim upon which relief may be granted because the very conduct Plaintiff complains about, namely, ECMC's attempt to collect Plaintiff's student loan debt and reporting the delinquent debt to the credit bureaus, is conduct mandated by the Federal Family Education Loan Program ("FFELP"), established in conjunction with the Higher

Education Act of 1965 ("HEA"), as amended, 20 U.S.C. § 1071, *et seq*., and governing regulations. [Doc. 11 at 2–3 & n.1]. Therefore, ECMC argues, as a matter of law, that its actions in connection with collection efforts and activity cannot sustain or form the bases of Plaintiff's lawsuit. [Docs. 11, 12]. The Court agrees.

## A.    The FFELP & Role of Guaranty Agencies

In order to appropriately frame the Plaintiff's claims and the argument concerning the sufficiency of Plaintiff's Complaint, the undersigned briefly describes the aims and objectives of the Federal Family Education Loan Program and the pertinent federal regulations as they relate to guaranty agencies. See 20 U.S.C. § 1071, *et seq*; 34 C.F.R. §§ 682.200, 682.404, 682.410, 682.413.   "The purpose of the HEA is to keep the college door open to all students of ability, regardless of socioeconomic background." Pelfrey v. Educational Credit Management Corp., 71 F. Supp. 2d 1161, 1162–63 (N.D. Ala. February 10, 1999) (citation and internal quotation marks omitted).  Consistent with the HEA's purpose,

> [T]he . . . FFELP . . . encourages private lenders to make student loans by providing that the Secretary of Education pay part of the student's interest and costs and by guaranteeing loan repayment. . . . In order to implement the FFELP, the Secretary enters into agreements with guaranty agencies. . . . A guaranty agency guarantees loan repayment and pays the holder of the loan if the student defaults. The Secretary reimburses the guaranty agency for all or part of these payments under a re-insurance agreement with the guaranty agency. . . . Guaranty agencies also collect defaulted student loans. . . . When a guaranty agency collects on a defaulted loan,

AO 72A
(Rev.8/82)

> it sends most of the funds to the Secretary and retains a portion to defray
> the costs of collection.

Educational Credit Management Corp. v. D.C., 471 F. Supp. 2d 116, 116 (D. D.C. 2007) (citations omitted); see also Darrisaw v. Pennsylvania Higher Education Assistance Agency, 2017 WL 1377719, at *1 (S.D. Ga. April 11, 2017) (explaining that guaranty agencies "act as backstops" for the defaulted student loans in that guarantors pay the lender if a borrower defaults, guarantors are reimbursed by the Department of Education, and then guarantors seek to collect from the borrower on behalf of the Department of Education), appeal filed, May 9, 2017 (No. 17-12113).

"Guaranty agencies are not only given express authority to engage in collection activities, but federal regulations mandate that the agencies engage in due diligence to collect on defaulted loans as part of their agreement with the DOE." Bennett v. Premiere Credit of North America, LLC, 504 Fed. Appx. 872, 876 (11th Cir. 2013) (citation and internal quotation marks omitted); and see generally Pelfrey, 71 F. Supp. 2d at 1162–65 (providing a thorough overview of the role of guaranty agencies within the FFELP environment, dismissing plaintiff's complaint, and holding that guaranty agencies operating within the framework of the FFELP are not subject to the Fair Debt Collection Practices Act in that guarantors' conduct falls under the exception for "incidental to a bona fide fiduciary obligation" provided for in 15 U.S.C. §

14

1692a(6)(F)(i)).  For example, guarantors are required to contact the borrower through a sequence of dunning letters and telephone calls and report the defaulted student loan to consumer reporting agencies as well as federal and state income tax refund offsets, non-judicial administrative wage garnishment, and collection litigation when appropriate.  See 34 C.F.R. §§ 682.410(b)(6)(ii)–(vii); and see Pelfrey, 71 F. Supp. 2d at 1168–80.  Guarantors are subject to the imposition of remedial action by the Department of Education if they do not comply and carry out these regulatory duties with due diligence.  See 34 C.F.R. §§ 682.413(b)(2) and (c)(1).

Of particular import here, Defendant ECMC has been recognized as a FFELP guarantor by the Eleventh Circuit and other circuit courts of appeal.[6]  See Bennett, 504 Fed. Appx. at 877–78 (listing cases); and see In re Cleveland, 559 B.R. 265, 271 (N.D. Ga. September 16, 2016) (considering dischargeability of FFELP student loan debt and recognizing ECMC as the guarantor of the debtor's loan); see also Educational Credit Management Corp., 471 F. Supp. 2d at 116 (recognizing ECMC as a guaranty agency under FFELP); accord Lima v. United States Department of Education, 2017 WL 2265888, at *7 (D. Haw. April 25, 2017) ("It is widely established . . . that ECMC is

---

[6] According to Defendant ECMC, it provides specialized guarantor services to the Department of Education as well as other FFELP guaranty agencies, including accepting transfer of title to certain student loan accounts on which the student loan borrower has filed a bankruptcy proceeding.  [Doc. 11 at 2].

a guaranty agency.") (citations omitted).  The U.S. Department of Education website identifies ECMC as a guaranty agency for purposes of the FFELP.  <u>See</u> Guaranty Agency List, at <u>https://ifap.ed.gov/</u>drmaterials/attachments/appa.pdf (last visited June 14, 2017).  Accordingly, taking judicial notice of ECMC's status as a guaranty agency for purposes of the FFELP is appropriate.[7]

**B.      Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*.**

Plaintiff alleges negligent and willful violation of several provisions of the FCRA by Defendant ECMC. [Compl.].  More specifically, Plaintiff alleges that Defendant failed to follow reasonable procedures to ensure maximum possible accuracy of the information in its consumer reports in violation of 15 U.S.C. § 1681e(b), that Defendant failed to comply with the reinvestigation requirements in violation of § 1681i, that Defendant provided Plaintiff's credit file to companies without determining whether the request was for a permissible purpose in violation of § 1681b, and that Defendant failed to provide Plaintiff his credit file in violation of § 1681g.  [Compl. at 4–5].

---

[7] <u>See, e.g.</u>, <u>Darrisaw</u>, 2017 WL 1377719, at *3 (applying <u>Bennett</u> in context of FDCPA claim challenged pursuant to Rule 12(b)(6), taking judicial notice that defendant is listed as a guaranty agency posted on the Department of Education's official website, finding that defendant was not a debt collector and not subject to FDCPA given fiduciary status).

AO 72A
(Rev.8/82)

Defendant moves to dismiss all of Plaintiff's FCRA claims and points out that the FCRA provisions cited and relied upon by Plaintiff Fisher, Sections 1681e(b), 1681i, 1681b, and 1681g, do not apply to FFELP guarantors but instead impose duties on FCRA credit reporting agencies.  [Doc. 11 at 3, 6–9].  Defendant also contends, apparently in an abundance of caution, that Plaintiff does not have a private right of action under § 1681s-2(a)(3).[8]  [Doc. 11 at 6–7].

The FCRA endeavors to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."  Safeco Ins. Co. of America v. Burr, 127 S. Ct. 2201, 2205 (2007); accord Spokeo v. Robins, 136 S. Ct. 1540, 1545 (2016) (quoting 15 U.S.C. § 1681(a)(1)).  The FCRA "regulates the creation and the use of 'consumer report[s]' by 'consumer reporting agenc[ies]' for certain specified purposes, including credit transactions . . . ."  Spokeo, 136 S. Ct. at 1545 (quoting §§ 1681a(d)(1)(A)–(C) and 1681b).  "To achieve its purpose, the FCRA places distinct obligations on three types of entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies."  Chipka v. Bank of America, 355 Fed. Appx. 380, 382 (11th Cir. 2009) (citing 15 U.S.C. §§ 1681b, 1681m, and 1681s-2).

---

[8] Plaintiff's filings do not allege violation of § 1681s-2.  [Docs. 3, 7].  Section 1681s-2 speaks to the responsibilities of persons who furnish information to consumer reporting agencies.

AO 72A
(Rev.8/82)

For purposes of the FCRA, a "consumer reporting agency" ("CRA") is defined as:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f); accord Rush v. Macy's New York, Inc., 775 F.2d 1554, 1557 (11th Cir. 1985).  The FCRA generally defines a "consumer report" as:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for –
>
> (A) credit or insurance to be used primarily for personal, family, or household purposes;
>
> (B) employment purposes; or
>
> (C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d).  The FCRA consumer report definition expressly excludes "report[s] containing information solely as to transactions or experiences between the consumer and the person making the report[.]"  15 U.S.C. § 1681a(d)(2)(A)(i).

18

By definition, an entity is not a CRA within the meaning of the FCRA where no consumer report is generated.  See Smith v. First Nat'l Bank of Atlanta, 837 F.2d 1575, 1578 (11th Cir. 1988) (summary judgment properly granted in favor of bank-defendant where bank was not acting as a CRA, did not furnish a consumer report as defined by FCRA given that the bank only reported information based solely on its own experience with one of its customers) (citations omitted); and see Rush, 775 F.2d at 1557 (affirming dismissal of plaintiff's FCRA claim, quoting Section 1681a(f) and holding that defendant Macy's did not fall within statutory definition because it "did no more than furnish information to a credit reporting agency").

### i.    Alleged Violation of Sections 1681e(b), 1681i, 1681b, and 1681g

In this case, all of the FCRA requirements Plaintiff Fisher contends have been violated by Defendant ECMC govern the conduct of CRAs.  [Doc. 11 at 6].  For instance, Section 1681e(b) provides that "[w]henever a **consumer reporting agency** prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information . . . ." 15 U.S.C. § 1681e(b) (emphasis added). Section 1681i prescribes the terms and procedures that CRAs must follow when reinvestigation of disputed information is required and states that "a **consumer reporting agency** . . . shall, free of charge, conduct a reasonable investigation to determine whether the disputed information is inaccurate . . . ." See 15 U.S.C. § 1681i

19

(emphasis added).  Section 1681b outlines the statutorily approved purposes and circumstances upon which "any **consumer reporting agency** may furnish a consumer report . . . ."  15 U.S.C. § 1681b (emphasis added).  Finally, Section 1681g provides in pertinent part that "[e]very **consumer reporting agency** shall, upon request, . . . clearly and accurately disclose to the consumer . . . information in the consumer's file at the time of the request . . ." subject to certain limitations and if identification criteria are satisfied.  15 U.S.C. § 1681g (emphasis added).

In its role as a FFELP guaranty agency, Defendant ECMC is authorized, in fact required, to exercise due diligence in seeking to collect from a borrower on a defaulted student loan utilizing the prescribed means and is likewise required to report a defaulted student loan to CRAs.  See 34 C.F.R. §§ 682.410(b)(6)(ii)–(vii); and see Pelfrey, 71 F. Supp. 2d at 1168–80.  A guaranty agency's sole concern is the defaulted student loan that it is tasked with recovering on behalf of the Department of Education and is not tasked with analyzing a debtor's credit worthiness or other CRA functions.  As such, ECMC does not prepare or issue consumer reports as defined by the FCRA.  See 15 U.S.C. § 1681a(d)(2)(A)(I).  Because, at best, ECMC merely shared (or furnished) information to the CRAs, ECMC is not a CRA as defined by the FCRA.  See 15 U.S.C. § 1681a(f); and see Rush, 775 F.2d at 1557.  For this reason, Plaintiff's

claims alleging violations of Sections 1681e(b), 1681i, 1681b, and 1681g of the FCRA fail as a matter of law.[9]

### ii.    Alleged Violation of Section 1681s-2

Moreover, with respect to Plaintiff's ability to bring a claim under Section 1681s-2, an avenue of relief not mentioned in Plaintiff's filings, Defendant ECMC acknowledges that the FCRA also imposes certain responsibilities on persons or entities like ECMC who furnish information to CRAs.  See 15 U.S.C. § 1681s-2; and see Campbell v. Wells Fargo Bank, N.A., 73 F. Supp. 3d 644, 651 (E.D. N.C. 2014) (observing that the FCRA does not define "furnishers of information" and assuming without deciding that defendants were "furnishers of information" for purposes of resolving motion to dismiss) (citation omitted).  To the extent Plaintiff's Complaint could be construed as alleging a claim under Section 1681s-2, such claim would also fail as a matter of law.

---

[9] Even if this were not the case, certain of Plaintiff's allegations concerning purported FCRA violations may fall outside of the limitations period.  See generally 15 U.S.C. § 1681p (FCRA claims must be brought within the earlier of either two years after the date of discovery of the alleged violation by the plaintiff or within five years after the date of the alleged violation).  Plaintiff alleges violations of the FCRA dating back to 2012 and 2013 and filed suit against ECMC in July 2016.

AO 72A
(Rev.8/82)

Pursuant to Subsection 1681s-2(a), "persons may not knowingly furnish inaccurate information to a consumer reporting agency, must correct any such furnished information, and must notify a consumer reporting agency when any information is disputed by a consumer[.]" <u>Chipka</u>, 355 Fed. Appx. at 383 (citing § 1681s-2(a)(1)–(3)). "Congress, however, expressly reserved enforcement of subsection (a) to governmental agencies and officials, thereby limiting a consumer's private cause of action against a furnisher of credit information to violations of § 1681s–2(b)." <u>Id.</u> (citing § 1681s-2(c)–(d)); <u>accord</u> <u>Green v. RBS Nat'l Bank</u>, 288 Fed. Appx. 641, 642 n.2 (11th Cir. 2008) (citing 15 U.S.C. §§ 1681s-2(c), (d) and 1681s(c)(1)(B)); <u>see also</u> <u>Nawab v. Unifund CCR Partners</u>, 553 Fed. Appx. 856, 860 (11th Cir. 2013) (holding that consumer-plaintiff lacked standing to bring claims under § 1681s-2(a)). Thus, Plaintiff Fisher does not have a private right of action to redress a violation of § 1681s-2(a).

The only mechanism for enforcement of the FCRA available to a private citizen (i.e., a consumer) seeking to recover damages caused by a furnisher of information is Subsection 1681s-2(b). <u>See</u> <u>SimmsParris v. Countrywide Financial Corp.</u>, 652 F.3d 355, 358 (3rd Cir. 2011) (citations omitted); <u>accord</u> <u>Nawab</u>, 553 Fed. Appx. at 860–61 (citations omitted). Under  § 1681s-2(b), which imposes a duty to provide accurate

22

information, "furnishers of consumer credit information must also verify the sufficiency and accuracy of the information **when notified by a consumer reporting agency** of a credit-report dispute." <u>Chipka</u>, 355 Fed. Appx. at 383 (citing § 1681s–2(b) and § 1681i(a)(2)) (emphases added); <u>see also</u> <u>Nawab</u>, 553 Fed. Appx. at 861. "First, in order to trigger a duty to act, [the furnisher of credit information, here ECMC,] must receive notice pursuant to [S]ection 1681i(a)(2) . . . of a dispute with regard to the completeness or accuracy of any information it provided to a consumer reporting agency [('CRA')][.]" <u>Rambarran v. Bank of America, N.A.</u>, 609 F. Supp. 2d 1253, 1257 (S.D. Fla. 2009) (quoting § 1681s-2(b)(1)) (internal quotation marks omitted); <u>accord</u> <u>Nawab</u>, 553 Fed. Appx. at 861 (granting summary judgment on plaintiff's 1681s-2(b) claim where plaintiff's documentary evidence demonstrated that plaintiff – rather than CRA – notified defendant of debt dispute). "Notice to a furnisher of credit information . . . is provided pursuant to section 1681i(a)(2) when a CRA, such as Experian, Trans Union or Equifax, reports that a customer, such as Plaintiff, has disputed an item of credit that the [furnisher of information] provided to the CRA." <u>Rambarran</u>, 609 F. Supp. 2d at 1257 (citing § 1681i(a)(2)). "After receiving such notice, the [furnisher of information] is required to conduct an investigation with respect to the disputed information; and review all relevant

23

information provided to it by the CRA. Id. (quoting § 1681s-2(b)(1)) (internal quotation marks omitted).

In Campbell, evaluating the sufficiency of the complaint in accordance with Fed. R. Civ. P. 12(b)(6), the court held that the plaintiffs failed to state a claim pursuant to 15 U.S.C. § 1681s-2(b) where plaintiffs did not plausibly allege that they notified a CRA of a dispute about their line of credit account with defendants, did not allege that the CRA notified defendants of the dispute, and did not allege that defendants failed to adequately investigate the dispute. See Campbell, 73 F. Supp. 3d at 651–52. Here, Plaintiff complains about ECMC's purported failure generally to investigate the alleged dispute (i.e., plaintiff's claim that he did not borrow or owe any money under the Note) *as relayed by Plaintiff Fisher* – not as notified by any CRA. [Compl. at 3, ¶¶ 3, 16 ("Plaintiff requested . . . ."), ¶¶ 19–22 (describing Plaintiff's mailings of negative averments and facsimiles to ECMC)]. Viewing the facts as alleged by Plaintiff as true, construing them liberally, and allowing all reasonable inferences in Plaintiff's favor, no § 1681s-2(b) obligation to investigate (or reinvestigate) was triggered because Plaintiff Fisher does not allege that he filed his grievance or complained to any CRA. See Nawab, 553 Fed. Appx. at 860–61; and see SimmsParris, 652 F.3d at 358–59 (finding that the CRA is "one of the necessary players" in a private

24

individual's claim pursuant to § 1681s-2(b), and holding that "[u]nder the statutory framework and clear language of the statute, . . . a consumer must first alert the [CRA] that reported the allegedly erroneous information of a dispute . . . ."); see also Campbell, 73 F. Supp. 3d at 651–52.  Therefore, Plaintiff's factual allegations do not support a claim pursuant to § 1681s-2(b).

The undersigned respectfully **RECOMMENDS** that Defendant's motion be **GRANTED** on this issue and that Plaintiff's FCRA claims, both his First and Second Claims for Relief, be **DISMISSED WITH PREJUDICE.**   In addition, the undersigned **RECOMMENDS** that to the extent Plaintiff sought to bring a claim under 15 U.S.C. § 1681s-2(b), that such claim be **DISMISSED WITHOUT PREJUDICE**.

## C.    Bank Fraud / Fraud

Plaintiff Fisher alleges throughout his Complaint that Defendant ECMC sought to "defraud" Plaintiff by claiming to be the guarantor of his student loans.  [Compl.]. As already explained, Plaintiff's theory is dependent upon the faulty premise that Fisher was not, in fact, obligated to repay Bank of America pursuant to the terms of the Note (i.e., did not borrow money and did not owe money despite the Note promising to repay) the balance of the student loans and the assumption that Defendant lacked

25

authority to seek to collect on the Note.  To the extent that Plaintiff seeks to bring a cause of action for bank fraud and / or common law fraud – which is not at all clear from the Complaint – Defendant moves to dismiss for failure to plead fraud with specificity as required by Rule 9(b) of the Federal Rules of Civil Procedure.  [Doc. 11 at 20–22].

Rule 9(b) provides in pertinent part that, "In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b) (as amended 2007).  The circumstances constituting fraud typically include "the time, place, and content of the false misrepresentations, the facts misrepresented, and the nature of the detrimental reliance[.]" Elster v. Alexander, 75 F.R.D. 458, 461 (N.D. Ga. 1977); and see Burgess v. Religious Technology Center, Inc., 600 Fed. Appx. 657, 663 (11th Cir. 2015) (holding that plaintiff's allegations that did not indicate the date, time or place of the misrepresentation did not meet heightened fraud pleading requirement).  "Notably, the '[f]ailure to satisfy Rule 9(b) is a ground for dismissal of a complaint.'" FindWhat Investor Group v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005)).

26

As for bank fraud, Defendant contends that Plaintiff fails to allege or explain how Defendant allegedly committed the criminal offense of bank fraud. [Doc. 11 at 21–22]. Title 18, United States Code, Section 1344 provides that:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice –
>
> (1) to defraud a financial institution; or
>
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
> [is guilty of the offense of bank fraud.]

18 U.S.C. § 1344 (1990). While Plaintiff's Complaint references the bank fraud statute, see id., Plaintiff does not allege that Defendant ECMC attempted to commit any fraud of a bank or that ECMC obtained any funds from any bank. [Compl.].

In any event, Plaintiff's bank fraud claim fails as a matter of law because Plaintiff, a private citizen, has no private right of action to assert violation of the criminal bank fraud statute, 18 U.S.C. § 1344.[10] See Palacious v. Lienhard, 2015 WL 11571038, at *14 (N.D. Ga. December 30, 2015), report and recommendation adopted

---

[10] The same holds true with respect to Plaintiff's reference to the violation of the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343. [Compl. at 2, ¶ 6].

27

by 2016 WL 4502376 (N.D. Ga. January 25, 2016) (citations omitted); accord Connell

v. Regions Bank, 2007 WL 1877677, at *2 (N.D. Fla. June 27, 2007) (plaintiff could

not bring civil action for violations of federal criminal statutes governing bank fraud,

misapplication of bank funds, and false entries in bank records), report and

recommendation adopted by 2007 WL 2214860 (N.D. Fla. August 1, 2007); see also

Linda R.S. v. Richard D., 93 S. Ct. 1146, 1149 (1973) ("[A] private citizen lacks a

judicially cognizable interest in the prosecution or nonprosecution of another.").

    And in order to state a claim for common law fraud under Georgia law, Plaintiff

must allege facts in support of the following elements: "(1) false representation by

defendant; (2) with scienter, or knowledge of falsity; (3) with intent to deceive plaintiff

or to induce plaintiff into acting or refraining from acting; (4) on which plaintiff

justifiably relied; (5) with proximate cause of damages to plaintiff." WESI, LLC v.

Compass Environmental, Inc., 509 F. Supp. 2d 1353, 1358 (N.D. Ga. 2007) (citations

and internal quotation marks omitted).

    Defendant ECMC contends that Plaintiff fails to allege that he relied upon any

false statement made by ECMC and likewise did not allege injury resulting from the

reliance.   [Doc. 11 at 20–21].   Indeed, while Plaintiff identifies a handful of

communications from ECMC by date, he does not allege the purportedly fraudulent

28

content of ECMC's correspondence or explain how he relied upon ECMC's representations or how he was harmed. [Compl.].  The Court agrees with Defendant that Plaintiff's conclusory allegations of fraud do not state a claim and do not comport with the strict pleading requirements of Rule 9(b).  <u>See</u> <u>Elster</u>, 75 F.R. D. at 461; <u>and see</u> <u>Burgess</u>, 600 Fed. Appx. at 663; <u>see also</u> <u>Cooke v. BAC Home Loans Servicing, LP</u>, 2011 WL 4975386, at *3 (N.D. Ga. October 18, 2011) (dismissing unfair and deceptive act practices claim based upon alleged fraud where complaint contained legal conclusions that defendant engaged in "fraudulent, deceptive, unfair, and other wrongful conduct[,]" did not specify "facts and circumstances" that defendants allegedly failed to disclose, generally alleged defendants used "various rates and charges to disguise the actual payment schedule and loaned amount," but no specific rates or charges, and therefore did not satisfy Rule 9(b) (citations and internal quotation marks omitted)).

For these reasons, the undersigned respectfully **RECOMMENDS** that Defendant's motion be **GRANTED** on this issue and that Plaintiff's Fraud claim be **DISMISSED WITHOUT PREJUDICE** and that Plaintiff's Bank Fraud claim be **DISMISSED WITH PREJUDICE**.

29

### D.      Alleged RICO Violation, 18 U.S.C. §§ 1961–1968

In his Complaint, Plaintiff generally cites "Frauds and Swindles and RICO, 18 U.S.C. §§ 1961–1968." [Compl. at 1–4, ¶¶ 2, 15, 18; Doc. 7 at 2].  Plaintiff asserts within the body of his Complaint that Defendant ECMC's conduct with reference to Plaintiff's defaulted student loan debt constitutes a "pattern of racketeering activity" in violation of 18 U.S.C. §§ 1961, *et seq*. [Compl. at 2–4, ¶¶ 2, 18, 23].  Defendant moves to dismiss any RICO claim Plaintiff attempts to bring for failure to state a claim upon which relief may be granted.  [Doc. 11 at 9–20 (identifying eight independent reasons why Plaintiff's Complaint fails to state a civil RICO claim)].

Under the federal RICO statute, "[a]ny person injured in his business or property *by reason of* a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . ." 18 U.S.C. § 1964(c) (emphasis added).   "'To recover, a civil plaintiff must establish that a defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts.'"  Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1348 (11th Cir. 2016) ("Ray II") (affirming dismissal of plaintiff's complaint alleging civil RICO action for failure to allege facts in support of

30

proximate cause and the existence of an enterprise) (quoting <u>Ray v. Spirit Airlines, Inc.</u>, 767 F.3d 1220, 1224 (11th Cir. 2014) ("<u>Ray I</u>")). "A civil plaintiff must also show (1) the requisite injury to business or property, and (2) that such injury was by reason of the substantive RICO violation." <u>Ray II</u>, 836 F.3d at 1348 (citation and internal quotation marks omitted). "The Supreme Court has stated that 'RICO is to be read broadly . . . [and] liberally construed to effectuate its remedial purposes.'" <u>NCI Group, Inc. v. Cannon Services, Inc.</u>, 2009 WL 2411145, at *8 (N.D. Ga. August 4, 2009) (quoting <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 105 S. Ct. 3275, 3285–86 (1985) (citation and internal quotations omitted)). As stated previously, the Court is not permitted to rewrite Plaintiff's pleading. <u>See</u> <u>Osahar</u>, 297 Fed. Appx. at 864.

In this case, Plaintiff alleges that on May 8, 2013, ECMC corresponded with Plaintiff through the U.S. Postal Service and "attempted to collect an illegal debt more than twice by mail[.]"[11] [Compl. ¶ 6]. Plaintiff alleges that ECMC's May 8, 2013, correspondence was an attempt to collect "an illegal debt" and constitutes a "pattern

---

[11] In his motion for summary judgment, Plaintiff cites Defendant's use of the postal service more than two times "in order to extort the plaintiff" as the basis of violating the RICO and also alleges that "[D]efendant's actions constitute actual malice, statements, correspondence, phone calls and other communications were done with the intent to unjustly enrich the defendant" in violation of RICO. [Doc. 7 at 2, ¶¶ 4, 5].

31

of racketeering[.]"  [Compl. ¶¶ 6, 18].  Plaintiff further asserts that ECMC's guarantor claim "shows a pattern of racketeering, in an attempt to defraud the plaintiff from . . . property and currency." [Compl. at 2, ¶ 2].  Clearly, the gravamen of Plaintiff's claim is that ECMC, an alleged sham guaranty agency, sought to collect an illegal or non existent debt.  [Compl.].

Presumably, Plaintiff contends that Defendant's use of the mail (and banking system) are substantive RICO offenses amounting to "racketeering activity." Construed liberally and allowing all reasonable inferences in Plaintiff's favor, Plaintiff's Complaint does not allege any specific facts concerning Defendant's purported "racketeering activity."  18 U.S.C. § 1961(1)(B); and see Ray II, 836 F.3d at 1348 ("'RICO provides a private right of action . . . to any person injured in his business or property by reason of the conduct of a qualifying enterprise's affairs through a pattern of acts indictable as mail fraud.'") (quoting Bridge v. Phoenix Bond & Indem. Co., 128 S. Ct. 2131, 2138 (2008)) (mail fraud identified as a predicate act and falling within "racketeering activity" as defined in 18 U.S.C. § 1961(1)(B)). Instead, like Plaintiff's other causes of action (and indicative of Plaintiff's reliance on a form complaint), Plaintiff's RICO claim is, at its core, premised on his argument that the student loans were not valid, that he did not borrow or owe money despite the

32

Note, that ECMC is not a FFELP guaranty agency, and that ECMC's efforts to collect on his student loans and its reporting of Plaintiff's default on his student loans to credit reporting agencies was somehow unlawful.

The Court finds Plaintiff Fisher's civil RICO claim fatally deficient. Critically, Plaintiff alleges no *facts* from which an inference can reasonably be drawn that Plaintiff's underlying student loan debt was invalid or illegal. See 18 U.S.C. § 1961(6) (defining "unlawful debt").[12]  Likewise, Plaintiff fails to allege facts giving rise to an inference that ECMC's collection activity amounted to mail or bank fraud or was otherwise contrary to law.  See Cliff v. Payco General American Credits, Inc., 363 F.3d 1113, 1123 (11th Cir. 2004) (holding that no private cause of action exists under the HEA and that only the Secretary of Education – not debtors – has the authority to

---

[12] For purposes of RICO, "unlawful debt" is defined as:

[A] debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

18 U.S.C. § 1961(6).

enforce the HEA and rectify violations of HEA procedures); <u>and see</u> <u>McCullough v.</u>
<u>PNC Bank, Inc.</u>, 298 F.3d 1217, 1226 (11th Cir. 2002) (holding that plaintiff's
allegations of mail and wire fraud were "nothing more than purported HEA violations
pled in RICO terms").  Plaintiff alleges no pattern of "racketeering activity."

Moreover, Plaintiff alleges no facts in support of any enterprise, the second
element of a civil RICO claim.  <u>See</u> <u>Ray II</u>, 836 F.3d at 1352 (explaining that an
association-in-fact enterprise for purposes of the civil RICO statute is "'simply a
continuing unit that functions with a common purpose'" and "need not have a
hierarchal structure, specific governing procedures, or fixed roles for its members")
(citation omitted).

The undersigned respectfully **RECOMMENDS** that Defendant's motion be
**GRANTED** on this issue and that Plaintiff's civil RICO claim be **DISMISSED**
**WITHOUT PREJUDICE**.

### IV.     Conclusion

Based on the foregoing reasons and cited authority, the undersigned
**RESPECTFULLY RECOMMENDS** that Defendant ECMC's Motion to Dismiss
[Doc. 11] be **GRANTED**.  Specifically, the undersigned **RECOMMENDS** that
Plaintiff's FCRA claims alleging violation of 15 U.S.C. §§ 1681e(b), 1681i, 1681b,

34

and 1681g be **DISMISSED WITH PREJUDICE** and that to the extent Plaintiff sought to bring a claim alleging violation of 15 U.S.C. § 1681s-2(b) that it be **DISMISSED WITHOUT PREJUDICE**; that Plaintiff's fraud claim be **DISMISSED WITHOUT PREJUDICE** and Plaintiff's bank fraud claim be **DISMISSED WITH PREJUDICE**; and that Plaintiff's civil RICO claim be **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER RECOMMENDED** that Plaintiff Fisher's Motion for Summary Judgment [Doc. 7] be **DENIED as MOOT**.

All pretrial matters have been concluded with the issuance of this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1), this Court's Local Rule 72.1, and Standing Order 14-01 (N.D. Ga. August 15, 2014).  The Clerk, therefore, is **DIRECTED** to terminate the reference to the Magistrate Judge.

**SO ORDERED THIS** 5th day of July, 2017.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

35